**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JESUS ALBERTO LOPEZ GUTIERREZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 19-8049 |
| | ) | |
| THE UNITED STATES OF AMERICA; | ) | |
| PETER BERG, in his capacity as Director of the | ) | |
| St. Paul ICE Field Office; MATTHEW | ) | |
| ALBENCE, in his capacity as acting Director of | ) | |
| U.S. Immigration and Customs Enforcement; | ) | |
| CHAD WOLF, in his capacity as Acting | ) | |
| Secretary of Homeland Security; and | ) | |
| KENNETH CUCCINELLI in his capacity as | ) | |
| Acting Director of United States Citizenship and | ) | |
| Immigration Services, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT**

Plaintiff Jesus Alberto Lopez Gutierrez, by his undersigned attorneys, for his complaint against the United States of America and various officials of United States agencies in their official capacities, alleges as follows:

**INTRODUCTION**

1. This action is brought pursuant to the Administrative Procedure Act, 5 U.S.C. §706, to redress the deprivation of Mr. Gutierrez's rights under the Fifth Amendment to the United States Constitution and the Administrative Procedure Act's protections against arbitrary and capricious action.

2. Mr. Gutierrez is one of approximately 700,000 young people who received a lifeline through the Deferred Action for Childhood Arrivals ("DACA") program. The DACA

program grants multiple benefits and entitlements to recipients, including authorization to work and travel, as well as the right to reapply for DACA.

3. Mr. Gutierrez has lived in Chicago since he was nine years old. His grandmother, parents, siblings, and nieces and nephews rely on him to help pay rent, to care for medical needs, and to babysit. His employer describes him as an "outstanding, responsible, hardworking and bright employee."

4. Mr. Gutierrez is currently jailed in immigration detention. He sought discretionary release from Immigration and Customs Enforcement ("ICE"), but ICE failed to consider releasing him, as required by the DACA program.

5. The DACA program allows DACA recipients to reapply for DACA, potentially providing relief from deportation. Because DACA cannot be granted to persons in immigration detention, the DACA program establishes channels for DACA recipients to apply for release from immigration detention so that they can reapply for DACA and avoid deportation.

6. The United States has reneged on its obligations to Mr. Gutierrez and thousands of other DACA recipients by illegally closing channels for DACA recipients in immigration detention to seek release to reapply to the program.

7. Mr. Gutierrez was prejudiced by the United States' actions because DACA relief is time sensitive. If Mr. Gutierrez is released, and renews DACA, he may avoid removal. If he is removed before his DACA application is adjudicated, he is unlikely to return, and thereby unable to enjoy DACA status and the benefits DACA status confers.

8. A nationwide injunction requires federal immigration agencies to "maintain the DACA program on the same terms and conditions as were in effect before the rescission on

September 5, 2017, including allowing DACA enrollees to renew their enrollment…"
*Regents of the University of California v. United States, Department of Homeland Security*, 279 F. Supp. 3d 1011, 1048 (N.D. Cal. 2018). These terms include a process for detained persons to seek DACA renewal. Mr. Gutierrez attempted to utilize this process, only to find that it had been rescinded.

9.  Mr. Gutierrez challenges the United States' failure to consider releasing him from immigration detention so he can reapply for DACA. Mr. Gutierrez seeks a preliminary and permanent injunction requiring the United States to uphold the terms of the DACA program and consider him, and other similarly situated persons, for release from immigration detention. Without such relief, Mr. Gutierrez may be deported, losing the chance to enforce obligations owed to him under the DACA program.

## JURISDICTION AND VENUE

10. Jurisdiction is conferred on this court by 28 U.S.C. § 1331 (federal question); under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*; and under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706.

11. The Court has the authority to issue the requested declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202, and 5 U.S.C. §§ 705-706.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1)(C), which provides that a suit against federal agencies or officials acting in their official capacities may be brought in any judicial district where a plaintiff in the action resides if no real property is involved in the action. Plaintiff Jesus Alberto Lopez Gutierrez resides in Chicago, within the Northern District of Illinois.

**PARTIES**

13. Plaintiff Jesus Alberto Lopez Gutierrez is an immigrant of Latin American descent and resident of Chicago, Illinois.

14. Defendant United States of America is named as a defendant pursuant to 5 U.S.C. § 702, providing that the United States may be named as defendant in an APA action.

15. Defendant Peter Berg is the Field Office Director responsible for the Field Office of ICE with administrative jurisdiction over Petitioner's case. He is named in his official capacity.

16. Defendant Matthew Albence is the acting Director of ICE. He is responsible for the administration of ICE and the implementation and enforcement of the immigration laws, including immigration detention. He is named in his official capacity.

17. Defendant Chad Wolf is the acting Secretary of Homeland Security (DHS), which is responsible for the administration of ICE and USCIS, which are subunits of DHS, and the implementation and enforcement of the immigration laws. He is named in his official capacity.

18. Defendant Kenneth Cuccinelli is the acting Director of USCIS. He is responsible for the administration of USCIS and the administration of the DACA program. He is named in his official capacity.

**STATEMENT OF FACTS**

19. Mr. Gutierrez was born in Mexico. He entered the United States at Chicago, Illinois on March 24, 2005 with a nonimmigrant B1/B2 visitor visa and has continuously resided in Chicago since that time.

20. On February 4, 2013, Mr. Gutierrez's I-821D application for Consideration of Deferred Action for Childhood Arrivals was approved.

21. Mr. Gutierrez was also granted an employment authorization document under category (c)(33) for DACA recipients.

22. In June 2014, Mr. Gutierrez graduated from Eric Solorio Academy High School in Chicago, Illinois.

23. Mr. Gutierrez was employed as a construction worker and contributed most of his wages to his family. Mr. Gutierrez provides care and financial support for his parents, both diagnosed with diabetes, and his elderly grandmother, who suffers from osteoporosis and arthritis in various parts of her body and has incurable back injuries.

24. Mr. Gutierrez has two older siblings, a brother and a sister. Mr. Gutierrez provides childcare to his sister's four children: C.L., age 14; A.L., age 10; M.L., age 9, and O.L., age 6.

25. Mr. Gutierrez's DACA status expired on February 3, 2015.

26. On May 21, 2019, Mr. Gutierrez was a passenger in a vehicle traveling through Tiffin, Iowa on his way home to Chicago from a camping trip with friends.

27. Mr. Iowa was taken into custody by Iowa police and charged with possession of marijuana. The charges have since been dropped.

28. Following his arrest, Mr. Gutierrez was transferred into ICE custody at Marshall County Jail in Marshalltown, Iowa. The Department of Homeland Security initiated removal proceedings against him.

29. At a July 1, 2019 bond hearing, Mr. Gutierrez was denied bond and ruled subject to mandatory detention by Immigration Judge Matthew E. Morrissey in the Omaha, Nebraska Immigration Court.

30. Judge Morrissey subjected Mr. Gutierrez to mandatory detention on the grounds that he admitted to the essential elements of a controlled substance offense during the July 1, 2019 bond hearing.

31. In fact, Mr. Gutierrez never received an explanation of the essential elements of the controlled substance offense, which is a requirement of imposing mandatory detention based on an admission.

32. Mr. Gutierrez has not been convicted of a controlled substance offense, or any offense constituting a ground of deportability or inadmissibility.

33. ICE's website (ice.gov/daca) states, "[i]f you are currently in immigration detention and believe you meet the guidelines for [DACA] … Identify yourself to your case officer explaining you believe you are DACA/DAPA eligible. Your case officer will review your case along with the local Office of the Chief Counsel. If you appear to meet the DACA/DAPA requirements, you may be released on an alternative form of supervision to allow you to pursue your case with U.S. Citizenship and Immigration Services (USCIS). If your case officer is unavailable, you can contact the ICE Detention Reporting and Information Line at 1-888-351-4024 (staffed 8:00 a.m. – 8:00 p.m., Monday – Friday); or submit an email to ERO.INFO@ice.dhs.gov and the appropriate action will be taken in a timely manner." "Deferred Action for Childhood Arrivals…", U.S. Immigration and Customs Enforcement, www.ice.gov/daca, last accessed Dec. 3, 2019.

34. Based on this guidance, on July 11, 2019, Mr. Gutierrez's attorneys submitted a request for review of *Prima Facie* Evidence of DACA Renewal Eligibility to the general ERO inquiry email (ero.info@ice.dhs.gov) so that ICE could consider his eligibility and release him under an alternative form of supervision, allowing him to file his DACA renewal application with USCIS.

35. On July 11, 2019, ICE-ERO redirected Mr. Gutierrez to USCIS, stating via email, "the most expedient manner in which to obtain a response to your inquiry is through contact with [USCIS]."

36. ICE did not respond, and has not responded, to Mr. Gutierrez's request for review of *Prima Facie* Evidence of DACA Renewal Eligibility.

37. On July 11, 2019, Mr. Gutierrez's attorneys attempted to submit, via personal delivery, a request for review of *Prima Facie* Evidence of DACA Renewal Eligibility to the ICE-ERO St. Paul Minnesota Field Office. The Field Office refused to accept delivery of the request.

38. On July 11, 2019, Mr. Gutierrez filed application I-821D, Consideration of Deferred Action for Childhood Arrivals, to renew his DACA status with USCIS.

39. On July 12, 2019, USCIS received Mr. Gutierrez's application to renew DACA (Receipt #IOE0906993088).

40. On August 2, 2019, Mr. Gutierrez received form I-797C, Notice of Action, advising him that he had been scheduled for a biometrics appointment on August 22, 2019 at a USCIS ASC location in Burbank, IL.

41. On August 15, 2019, Mr. Gutierrez's attorneys spoke with Supervisory Detention and Deportation Officer Bottjen, who indicated that ICE requires an order from USCIS to

either transport or transfer Mr. Gutierrez for a scheduled biometrics appointment or to share biometrics data with USCIS.

42. After speaking to Officer Bottjen, Mr. Gutierrez's attorneys contacted the USCIS Contact Center at (800) 375-5283 and spoke to Officer Anaya.

43. On August 15, 2019, Officer Anaya submitted a request that biometrics be taken at Mr. Gutierrez's place of detention or that an order be issued from USCIS to ICE to share existing biometric data. Officer Anaya told Mr. Gutierrez's attorneys that the processing of the request could take up to 30 days.

44. On August 16, 2019, Mr. Gutierrez's attorneys attempted to file a request for accommodations at www.uscis.gov/accommodations. However, the website would not accept the request.

45. After attempting to file online, Mr. Gutierrez's attorneys submitted an expedited request for accommodation in conjunction with the required biometrics appointment via USPS Priority Mail to the USCIS Nebraska Field Office. This request documented conflicting representations made by USCIS and ICE about how Mr. Gutierrez's DACA application should be processed.

46. On August 28, 2019, Mr. Gutierrez's attorneys received Form I-797C, Notice of Action, scheduling Mr. Gutierrez for a biometrics appointment on October 9, 2019 at the USCIS Application Support Center in Burbank, IL.

47. On September 16, 2019, Mr. Gutierrez's attorneys spoke with USCIS Ombudsman Galvez who stated that USCIS had requested Mr. Gutierrez's A-file for case processing, but ICE had not responded.

48. Mr. Gutierrez sought continuances in his removal proceedings so that he could enforce his rights under the DACA program and seek relief from deportation. On September 23, 2019, Immigration Judge Morrissey denied Mr. Gutierrez's motion to continue and issued an order of removal against Mr. Gutierrez.

49. On October 1, 2019, nearly three months after Mr. Gutierrez first submitted his request for review of evidence of *Prima Facie* Evidence of DACA Renewal Eligibility, USCIS responded to Mr. Gutierrez's DACA application, replying that it did not have authority to consider Form I-821D because he was detained at the time of filing and at the date of response.

50. On October 18, 2019, Mr. Gutierrez was transferred to Hardin County Correctional Center, located at 1116 14th Avenue, Eldora, IA 50627, where he remains in ICE custody.

51. Mr. Gutierrez is eligible to renew his DACA status.

52. As of this filing date, Mr. Gutierrez remains in detention, without review of his request for release to reapply for DACA, despite his showing of *prima facie* eligibility for DACA.

53. DHS has issued National Standard Operating Procedures for DACA ("DACA SOP.") This document provides "nearly 150 pages of specific instructions" for granting, denying, renewing, and terminating deferred action. *Texas v. U.S.*, 809 F.3d 134, 173 (5th Cir. 2015) (citing the DACA SOP as evidence that DACA is not a truly discretionary program), *aff'd* by an equally divided court, 136 S. Ct. 2271 (2016).

54. As of this filing date, on information and belief, ICE has not considered Mr. Gutierrez's request for release from detention.

## COUNT ONE

## ADMINISTRATIVE PROCEDURE ACT – UNCONSTITUTIONAL ACTION

55. Mr. Gutierrez repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

56. This Count is brought against all Defendants and seeks declaratory and injunctive relief under the Administrative Procedure Act (APA).

57. The APA requires courts to "hold unlawful and set aside agency action" that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B) (2019).

58. Aliens who are physically present in the United States are guaranteed the protections of the Due Process Clause. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). The Constitution "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). A threshold inquiry in any case involving a violation of procedural due process "is whether the plaintiffs have a protected property or liberty interest and, if so, the extent or scope of that interest." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972).

59. Through the DACA program, the federal government established specific criteria and a well-defined framework providing benefits to immigrants. DACA recipients and renewal petitioners reasonably expected that they would be able to live and work in the United States so long as they continued to meet program criteria and the program continued to operate. These reasonable expectations constitute a protected property interest under the

U.S. Constitution. *See, e.g.*, *Perry v. Sindermann*, 408 U.S. 593, 601–03 (1972) (reliance on informal policies and practices may establish a legitimate claim of entitlement to a constitutionally-protected interest); *see also Texas v. United States*, 809 F.3d 134, 174 (2015), *aff'd by an equally divided court*, 136 S. Ct. 2271 (2016) (explaining that "DACA involve[s] issuing benefits" to certain applicants).

60. The standards in the DACA SOP are not discretionary; they are enforceable commitments to DACA applicants, recipients, and renewal petitioners. *See Texas v. United States,* 86 F. Supp. 3d 591, 609 (S.D. Tex. 2015) (finding that no real "discretion" used in processing DACA applications); *id.* at 661 n76 ("DHS knew . . . that by giving the recipients legal status, it was triggering obligations on the states as well as the federal government.").

61. The agency defendants deprived Mr. Gutierrez of property interests protected by the Due Process Clause. The property interests protected by the Due Process Clause "extend beyond tangible property and include anything to which a plaintiff has a 'legitimate claim of entitlement.'" *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576–77 (1972). Such property interests are created by "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577. Therefore, an individual has a protected property interest where they have a reasonable expectation of entitlement to that interest.

62. Mr. Gutierrez possessed a protected property interest in his DACA status, the benefits DACA status confers, and his ability to apply for renewal of DACA status. Benefits conferred under DACA include the ability to legally work in the United States, establish eligibility for benefits, and travel internationally. *See Texas v. United States*, 809 F.3d

134, 166 (5th Cir. 2015) *aff'd by an equally divided court*, 136 S. Ct. 2271 (2016) ("Deferred action . . . is much more than nonenforcement: It would affirmatively confer 'lawful presence' and associated benefits on a class of unlawfully present aliens."). These protected property interests stem from the government's decision to grant Mr. Gutierrez these benefits.

63. Mr. Gutierrez's protected property interests under DACA included the right to apply for DACA renewal. Grants of DACA are "subject to renewal," according to the guidelines established by the Secretary of Homeland Security's 2012 memorandum establishing the program ("DACA Memo").

64. At the time Mr. Gutierrez sought to apply for DACA renewal, he was eligible for DACA renewal, and was detained and in removal proceedings, but was not subject to a final order of removal.

65. The DACA Memo requires ICE to act on behalf of DACA-eligible persons in removal proceedings, including:

a. "Exercise prosecutorial discretion, on an individual basis, for individuals who meet the above criteria by deferring action for a period of two years, subject to renewal, in order to prevent low priority individuals from being removed from the United States"; and,

b. "…use its Office of the Public Advocate to permit individuals who believe they meet the above criteria to identify themselves through a clear and efficient process."

66. Currently, USCIS does not grant DACA renewal applications from petitioners in immigration detention. "Frequently Asked Questions," U.S. Citizenship and Immigration

Services, www.uscis.gov/archive/frequently-asked-questions, last accessed Nov. 11,
2019. Instead, a petitioner detained in immigration detention must obtain release from
detention to become eligible for DACA renewal.

67. As required by the DACA program, ICE created a process for DACA-eligible persons in
immigration detention to seek release, so that USCIS can consider granting their DACA
applications. Such persons are instructed to contact their case officer or email
ERO.INFO@ice.dhs.gov. Detainees who appear to meet DACA requirements may be
released on an alternative form of supervision. "Deferred Action for Childhood Arrivals
(DACA) and Deferred Action for Parents of Americans and Lawful Permanent Residents
(DAPA)," U.S. Immigration and Customs Enforcement, www.ice.gov/daca, last accessed
Nov. 11, 2019.

68. Despite multiple efforts by Mr. Gutierrez's counsel to present evidence of DACA
renewal eligibility to ICE, ICE refused to consider such evidence or respond to inquiries
regarding DACA renewal either through its email at ERO.INFO@ice.dhs.gov or in
person at its St. Paul Minnesota Field Office.

69. Instead, ICE responded to Mr. Gutierrez's attorney that "the most expedient manner in
which to obtain a response to your inquiry is through contact with [USCIS]," even though
the DACA Memo and ICE's own policies established a process by which ICE reviews
the DACA eligibility of immigration detainees and evaluates whether to release them.

70. A nationwide injunction requires ICE to "maintain the DACA program *on the same terms
and conditions* as were in effect before the rescission on September 5, 2017, including
allowing DACA enrollees to renew their enrollment…" *Regents of the University of*

*California v. United States, Department of Homeland Security*, 279 F. Supp. 3d 1011, 1048 (N.D. Cal. 2018) (emphasis added).

71. The "terms and conditions" of the DACA program include channels for DACA renewal and relief from deportation, including a process to seek release from detention. These channels are central to the DACA program and are included in the original DACA Memo. DACA Memo; *see also Regents of the University of California v. United States Department of Homeland Security*, 908 F.3d 476, 515 (9th Cir. 2018) (stating 99% approval rate for adjudicated DACA renewal applications "might have revealed" question of fact regarding mutually explicit understanding of presumptive renewal as to individual DACA renewal applications).

72. On information and belief, ICE dismantled the core functions of the former Office of the Public Advocate in violation of the nationwide injunction requiring the office to maintain the DACA program.

73. Although Mr. Gutierrez is not entitled to a *favorable exercise* of ICE's discretion in considering his release, the DACA program does entitle Mr. Gutierrez to an *exercise of discretion* from ICE. Mr. Gutierrez has a protected property interest that ICE consider his release so that he may be considered for a DACA renewal.

74. Additionally, ICE's failure to maintain the DACA program on the same terms and conditions as were in effect before the September 5, 2017 rescission of DACA prejudiced Mr. Gutierrez by denying him an exercise of discretion to which he was entitled.

75. The above omissions constitute "agency action," as a failure to act falls under the definition of "agency action" under 5 U.S.C. § 551(13).

76. The above omissions constitute "final agency action," as no process exists for Plaintiff to appeal the denied exercise of discretion.

77. ICE violated the Due Process Clause of the U.S. Constitution by failing to exercise discretion regarding Mr. Gutierrez's request for release from detention.

78. ICE violated the Due Process Clause of the U.S. Constitution by failing to maintain the DACA program under established terms and conditions.

79. USCIS violated the Due Process Clause of the U.S. Constitution by failing to maintain the DACA program under established terms and conditions and failing to coordinate with ICE in administering DACA.

**COUNT TWO**

**ADMINISTRATIVE PROCEDURE ACT – ARBITRARY AND CAPRICIOUS ACTION**

80. Mr. Gutierrez repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

81. This count is brought against all defendants and seeks declaratory and injunctive relief under the APA.

82. The APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2019). Here, the agency defendants violated the APA because they violated their own established procedures in failing to consider Mr. Gutierrez's request for release to apply for DACA, and because their misleading communications delayed Mr. Gutierrez's attempts to remain in the country where he has lived since he was nine years old.

83. ICE policy under DACA allows individuals in immigration detention who appear to meet DACA requirements to be released on an alternative form of supervision so that they may pursue a DACA grant or DACA renewal.[1]

84. Mr. Gutierrez received DACA on February 4, 2013, and was eligible for DACA renewal at the time he sought release from ICE custody.

85. ICE and USCIS are currently subject to a nationwide injunction requiring the agencies to process DACA renewals. On information and belief, ICE has violated these injunctions by making changes to its DACA program and policies to make DACA renewals less accessible. Specifically, in Mr. Gutierrez's case, ICE failed to consider a request for release that would have allowed him to apply for DACA renewal, and USCIS failed to implement established policies providing for expedited processing of petitions for immigration benefits. *See* "How to Make an Expedite Request," U.S. Citizenship & Immigration Services, www.uscis.gov/forms/how-make-expedite-request (last accessed Nov. 21, 2019).

86. Mr. Gutierrez attempted multiple times to engage ICE and obtain its promised exercise of discretion under the DACA program. Mr. Gutierrez was consistently denied such exercise of discretion, including when ICE misdirected Mr. Gutierrez to seek a response

---

[1] "If you are currently in immigration detention and believe you meet the guidelines for Deferred Action for Childhood Arrivals (DACA) or Deferred Action for Parents of Americans and Lawful Permanent Residents (DAPA), you must: Identify yourself to your case officer explaining you believe you are DACA/DAPA eligible. Your case officer will review your case along with the local Office of the Chief Counsel. If you appear to meet the DACA/DAPA requirements, you may be released on an alternative form of supervision to allow you to pursue your case with U.S. Citizenship and Immigration Services (USCIS)." Immigration and Customs Enforcement, "Deferred Action for Childhood Arrivals (DACA) and Deferred Action for Parents of Americans and Lawful Permanent Residents (DAPA)," www.ice.gov/daca, accessed Nov. 7, 2019.

from USCIS and when the St. Paul Field Office of ICE refused to take personal delivery of *Prima Facie* Evidence of DACA Renewal Eligibility.

87. Additionally, on information and belief, ICE dismantled the core functions of the former Office of the Public Advocate in violation of the nationwide injunction requiring the office to maintain the DACA program.

88. The agency defendants acted unlawfully and in violation of the *Accardi* doctrine because they failed to "adhere to [their] own internal operating procedures," specifically where ICE failed to consider Mr. Gutierrez's eligibility for alternative supervision so that he could pursue a DACA renewal. Even though Mr. Gutierrez was not entitled to a favorable exercise of discretion by ICE, he was entitled to an *exercise* of such discretion. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *see also Samirah v. Holder,* 627 F.3d 652, 664 (7th Cir. 2010) ("Just as a state may give its people more legally enforceable rights than a statute or a constitutional provision requires … so may a federal agency, by a regulation within its authority to issue, grant persons subject to its authority more legally enforceable rights than a statute or the Constitution gives them."). Other circuits have found that the *Accardi* doctrine extends beyond formal regulations, and includes "policy statement[s]," "handbook[s]," "operating procedures," "Order[s]," "Weekly Bulletin[s]," unpromulgated rules documenting "usual practice," "Standards," and "Directive[s]." *Alcaraz v. I.N.S.*, 384 F.3d 1150, 1162 (9th Cir. 2004) (citing cases).

89. Mr. Gutierrez is entitled to have ICE exercise its discretion on his behalf by considering his request for release so that he can apply for DACA. Even when a deportable alien does not have a right to a favorable exercise of discretion, they have a right to challenge the failure to exercise discretion authorized by law. *INS v. St. Cyr*, 533 U.S. 289, 308 (2001).

90. The above omissions constitute "agency action," as a failure to act falls under the definition of "agency action" under 5 U.S.C. § 551(13).

91. The above omissions constitute "final agency action," as no process exists for Plaintiff to appeal the denied exercise of discretion.

92. For the foregoing reasons, ICE's failure to consider Mr. Gutierrez for release and ICE and USCIS's processing of Mr. Gutierrez's requests violated the APA.

93. ICE violated the APA by dismantling the core functions of the Office of the Public Advocate and by rescinding processes established under DACA to exercise discretion and grant release under alternative supervision to DACA-eligible persons.

94. USCIS violated the APA by failing to maintain the DACA program under established terms and conditions and failing to coordinate with ICE in administering DACA.

**COUNT THREE**

**ADMINISTRATIVE PROCEDURE ACT – ACTION UNLAWFULLY WITHHELD**

95. Mr. Gutierrez repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

96. This count is brought against Peter Berg and Matthew Albence and seeks declaratory and injunctive relief under the APA.

97. Under the Administrative Procedure Act, a plaintiff may bring suit to "compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1). *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (describing requirements for bringing 5 U.S.C. § 706(1) claim).

98. ICE was required by the DACA program and its own procedures to review Mr. Gutierrez's request for review of *Prima Facie* Evidence of DACA Renewal Eligibility.

99. ICE failed to take a discrete agency action that it was required to take by failing to review Mr. Gutierrez's request for review of Prima Facie Evidence of DACA Renewal Eligibility.

## COUNT FOUR

## DECLARATORY RELIEF ACT

100. Mr. Gutierrez repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

101. Actions by Agency Defendants violated Mr. Gutierrez's rights under the Fifth Amendment. Mr. Gutierrez seeks a declaration that: (i) Mr. Gutierrez has constitutionally protected interests in his DACA status and the benefits conferred thereunder; and (ii) Defendants' failures to follow their own rules and processes in responding to Mr. Gutierrez's attempts to renew his DACA status were unlawful and in violation of Mr. Gutierrez's constitutional rights.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Gutierrez prays that this Court grant the following relief:

1. Declare that Defendants' actions and omissions complained of herein violate 5 U.S.C. §§ 555(b), 706(1), 706(2)(A) and 706(2)(b); the 2012 DACA Memo; and the DACA SOP;

2. Hold unlawful and set aside the decision by ICE *not to* consider Mr. Gutierrez for release;

3. Order ICE to provide for review of Mr. Gutierrez's case and consider him for release from detention, as required by processes established under DACA;

4. Enter a preliminary and permanent injunction requiring ICE, USCIS, and DHS to reinstate and comply with internal processes established under DACA regarding the

exercise of discretion towards DACA-eligible detainees, including reestablishing any

functions of the Office of the Public Advocate that were subsequently dismantled;

5. Award Mr. Gutierrez reasonable costs and attorneys' fees; and,

6. Grant any other and further relief that this Court may deem fit and proper.


Dated: December 6, 2019

Respectfully Submitted,

**JESUS ALBERTO LOPEZ GUTIERREZ**

By: /s/ Wallace Hilke
One of his attorneys

Wallace Hilke
IL Bar # 6329814
Beyond Legal Aid
17 North State Street
Chicago, IL 60602
(312) 973-7308
whilke@beyondlegalaid.org

Hanan Van Dril
IL Bar # 6316543
Beyond Legal Aid
17 North State Street
Chicago, IL 60602
(312) 973-7308
hvandril@beyondlegalaid.org